# General Sessions.

## NEW-YORK, OCTOBER, 1818.

The People
v
John Weeks. } PETIT LARCENY.

THE only witness examined in the cause was the owner of the property, who proved that the three tumblers were stolen from his house a few evenings previous to the trial. He

knew nothing of the prisoner ; had never seen the tumblers or either of them in his psssession, nor did he see them after they had been stolen, until they were shown to him in the police office, when the prisoner was there under examination.

The district attorney then read the examination of the prisoner, taken at the time above referred to, by the police magistrates. In his examination, the prisoner denied that he had stolen the property ; he admitted, however, that he had had possession of one of the tumblers, but stated that it had been given to him by a black man ; and in the examination he related particularly, when and where, and under what circumstances he had received it. There was no other testimony whatever to charge the prisoner with the possession of the stolen property, or to connect it in any way with the prisoner.

The *Mayor* expressed an opinion, that the testimony was not sufficient to convict the prisoner.

The two aldermen on the bench dissented, and said, they thought the prisoner's confession that he had had a part of the stolen property in his possession would warrant the jury in finding him guilty.

The district attorney addressed the jury in support of the opinion expressed by the aldermen ; after which the mayor said, that unfortunately there was a difference in the opinions of the bench, as to the law which applied to this case. That when it so happened it was the duty of the judges to give their opinions *seriatem ;* and the jury, who in this, as in every other criminal case, were judges of the law as well as of the fact, were to render their verdict as their judgment should be influenced by the reasoning that might be offered to them. That for his own part, although he spoke with great deference and respect to his associate judges, he could ot avoid saying, that he felt an entire persuasion, that the rules

of law, as well as the obvious dictates of justice, were entirely opposed to a conviction upon the testimony which was before the jury.

It was sufficiently proved that the property had been stolen, but there was not a particle of testimony to raise a presumption even that the prisoner was the thief, nor the slightest proof that he had ever been in possession of any part of the property, but his own confession ; and his acknowledgment that he had been in possession, of one of the stolen articles, was connected with a statement of the manner in which he had obtained the article, upon which statement you may with just the same propriety believe him innocent entirely, as first to take from his own lips the fact, that he had possession, and then presume upon that fact that he stole the property.

It was a general rule, that when a person was found in possession of stolen property, he should be considered, and treated as if he were the thief, unless he could show that he came by it honestly. ' It is obvious that this rule is sufficiently rigid, and it is easy to conceive that a person may find himself possessed of property that has been feloniously taken, without being able to call witnesses to prove that he obtained it innocently. But it is a necessary rule, and unless courts and juries are governed by it, we may almost as well abandon the attempt to punish the crime to which it relates. It is true, the guiltless may be the victims of its application, but so they may be of every other general rule. The imperfections of our nature oblige us to apply to the investigation of criminal charges, such rules as are generally subservient to the administration of justice ; and if they should sometimes induce the conviction of the innocent, it must be considered that such sacrifices are inevitable, while the ministers of justice are but human.

I admit, therefore, said the mayor, the rule to be, that

where a person is found in the possession of stolen property, we are bound to consider him as the thief, unless he satisfies us that he obtained it honestly.

In this case what evidence have we that he had the possession of the articles in question ? Nothing but his own confession. But have we not the same evidence that he did not steal it ?

It is not denied but that all a prisoner may say upon his examination, as well that which may be exculpatory, as that which may tend to criminate him, is to be taken by the magistrate ; nor but that the whole is to be read to the jury, if any part be read. I admit that the jury are not bound under all circumstances to believe the whole That part which criminates, is to be taken most strongly against the party making the confession, because it is to be presumed that no one will say more than the truth against himself. Nor are the jury bound to believe that part of an examination which is exculpatory, if the facts which it states are contradicted by other testimony, and even if there be no contradictory testimony, if the facts themselves are absurd and inconsistent, they may be rejected. But that is not the case here. The prisoner tells us how he became possessed of the property ; that he may have obtained the article in the way he states, there is precisely the same ground to believe, as there is to presume he was the thief. You have his word for it that he came by the article honestly ; you have only his word for it that he had possession of the article at all ; upon that possession which his own word only proves, you are called upon to presume him the thief. But if the jury are not to be governed by the exculpatory part of an examination where the facts are not contradicted, nor improbable, inconsistent or absurd, why should the whole be read to the jury ? The rule requiring this is senseless, if the jury are bound to reject the exculpatory parts. To be consistent, we should

NEW-YORK,
1818.

The People
v.
Weeks.

allow the public prosecutor to read such parts only as he may choose to select. Indeed it is useless that the magistrates should record more than may tend to criminate! But who could hear of such a course without being shocked with its shameful injustice? It would, even exceed in inhumanity the practice of the inquisition; for it is said that its ministers noted the groans of their victims, that the holy fathers might at least pretend to judge how much of a confession was the result of torture, and how much of conscious guilt.

Some cases may be put which will show very manifestly the injsutice of separating an examination, as it is proposed to do in this case.

Suppose a person should be accused before the police office, of having assaulted and wounded another; that the prisoner should acknowledge that he had committed the assault and given the wound, but should add, that he was stopped on the highway, by the wounded man, who attempted to rob him—would you convict on the confession, and reject the clear part of the examination? So if one should be accused of murder, and confess that he had killed the deceased, but that he had struck him as he was attempting to break into the house of the accused at night. I do not believe any court would advise a jury that this would warrant a verdict against the accused.

By a statute of our state, it is made a felony for any person to have forged paper in his possession, knowing it to be so, with an intent to pass it. It is always considered that if a large quantity of such paper be found upon a person, and he does not satisfactorily show how he came by it, and for what honest purpose he intended it, that it must be presumed, not only that he knew it was forged, but that he intended to pass it.

Now, suppose one of our active and vigilant police magistrates should be found with a quantity of such paper upon

him, and should be brought before the mayor, for instance, for examination; the magistrate would not deny that he had the paper, nor that he knew it to be forged; but he might add that he had just taken it from a person who was accused before him of the same crime. I cannot but think, said the mayor, th it my brethern, as well as you, would be of opinion that it would be very unjust to rest the latter part of the examination, and to find a verdict of guilty on the confession.

Gentlemen, it is my opinion, that in this case you must take the whole of the examination together. That as the exculpatory facts are not contradicted by any other testimony; as they are not improbable, inconsistent, or absurd, we are bound to believe them as much as the confession. The testimony which tends to convict the prisoner, and that which tends to acquit him, come from the same source, the lips of the prisoner; and the latter is entitled to the same credit as the former. I may be wrong in this opinion, but the principles in which it is founded were impressed on my mind when I learned the rudiments of my profession; and if I am wrong I have been in an error through five and twenty years of practice at the bar, a great part of which time I have filled the office of public prosecutor.

I have occupied more of your time than the case would seem to deserve, but it is of importance to the individual; it involves a principle of deep interest in the administration of criminal law; and as I have the misfortune to differ in opinion with the gentlemen with me on the bench, I have thought it right to give at some length the reasons for the opinion I entertained.

But you will listen, as I shall do, with great respect and attention to the opinions which will be offered by the other judges; and as your minds may be convinced, so will be your verdict.

Justice WARNER, one of the court, offered a few remarks

NEW YORK,
1818.

The People
v.
Weeks.

in support of his opinion, which with every deference to the able argument of his honour the mayor, remained unaltered. The law he had always understood to be well settled, that the possession of stolen property involved the possessor in the presumption of being the thief. In this case we trace the possession to the prisoner, by what again I have always considered to be the best evidence, the confession of the prisoner himself. To take the parts of a prisoner's confession, which make against him, and reject the rest, may seem, at the first glance, hard ; but it is conceded on all hands that such must be the general rule ; and when it is considered how easy an artful villain, while he makes a show of ingenuousness, by acknowledging what perhaps it would be worse than in vain for him to deny ; that he indeed had stolen property in his possession, may smooth over, or do away his guilt entirely, by stating that he found the property, or bought it, or that it was given to him, as in the present case, I confess I am not disposed to yield to the refinements by which the case before us is attempted to be excepted from that general rule.

Alderman Underhill did not go into a formal detail of the reasons for his opinion. Verdict, NOT GUILTY.